My client maintains that there were no exigent circumstances justifying the warrantless search of his apartment. The district court justified the search in this case based on mere possibility that the person who had earlier in the day called 9-1-1 complaining of domestic violence had somehow gotten herself or been taken back into the apartment. Well, counsel, let's say that in fact she had been dragged back into the apartment and the cops didn't knock at the door, what do you think would have happened? Well, the test here is not – the test here is was there any objectively reasonable basis to believe that she was back in the apartment. Based on the timeline in this case, I think it defies all logic to believe that that could have occurred. And I'd like to focus on the timeline. If, as the cops, to the police officer's choice at that moment, in terms of what to do, that's what your question is. I do not have quite understood the timing themselves, but she had agreed to be there at the front of the apartment building. She wasn't there. They went and looked for her at Vons. She wasn't there. Even though your analysis of the number of minutes it would have taken them to come and the cops and so forth, I don't think we cut it that fine. And I would kind of commend the cops for trying to get ahold of the manager, get the key, then getting the key off of Black, and then going and taking a look, you know? Well, the Supreme Court has said very clearly in Brigham City that the test is the objectively reasonable person standard – objectively reasonable basis to believe that a person is inside. If the police want to err and not pass that test, and want to err on a side of even greater caution, when there basically is no reasonable basis to believe a person is inside, but they want to check anyway, they have that choice. But in that instance, the motion to suppress the gun should be granted. I think that in domestic violence cases, we maybe take a slightly different view. Well, this Court has said in Brooks, that's the most applicable case, I would say, that there's no per se domestic violence exception. And understandably, there may be greater deference, a greater margin of care in some instances. I actually think that the Supreme Court case in Brigham City starts to answer that question, because as soon as – directly after their announcement of the test, the objectively reasonable basis test, they cite to Randolph versus Randolph, the recent case where you have two people standing at the door in the consent case. And there is a discussion in that case about domestic violence. That cited – that citation in Brigham City to Georgia versus Randolph is citing that discussion, which appears to me at least an indication that this test applies in domestic violence cases. But even – I can go further, and that is – if I could just squeeze out this thought that none of the cases cited in Brooks and discussed in Brooks about domestic violence cases, in every one of those cases, there is corroboration that a person is inside. In this instance, did the police knock on the door before they opened it? Yes, they did. And call out, and nobody was there? Nobody was there. There was no answer. So the officer gets to the apartment three minutes after the woman hangs up the call with 911. She says that she's going to arrive there in a car with her – in a white truck with her mother. And moreover, and to me this may be the most significant fact, that her mother was there. Her mother was there. She said in a 911 call, my mother is here picking me up. I think that's at 36 of the record. But you don't know whether the mother was there or not. No, we don't. Later at trial, we realized that she was – this woman was lying. But that's what the court knew at the time. This may be a little unfair, but as a law school teacher of this stuff, I get carried away sometimes. I have a bit of a Wong-Sung kind of issue here. The seizure occurred, as a result, as I understand it, after they get a warrant. Did they go out and get a warrant after? The seizure of the gun – Right. – is after the warrant. Correct. They got a telephonic warrant. They got a telephonic warrant. They got a warrant. They got the warrant. Yes. Yes. So if – doesn't it depend, you know, in effect, where do you get standing? There's the – what you're trying to exclude is evidence obtained pursuant to a warrant, which I – unfortunately, it's not here, but it seems to me would have been issued in good faith under any circumstance. Well, the government has never argued inevitable discovery in this case, as far as I can see from the records, so they gave that up. And so what we go back to is that original illegality. The original illegality that even the warrant that they get later is the fruit of that original illegality. They're not killing her, though, because she said there was a gun. She said there was a gun. So why they needed to even say anything about having seen the gun? Because they had independent evidence before that that there was a gun. Well, they have probable cause back then to get a gun – to get a warrant for the gun. I – I – That's true. And your argument about the Supreme Court decision can be turned slightly differently, where they said, you know, if he objects and she consents, it's not enough. But not on the issue of standing, but his denial that he had any interest in the apartment, doesn't it leave, then, the only issue of whether she consented? And wasn't it pretty clear from that phone call? They wanted her to go in and get that gun. They wanted her to get the gun. No, she wanted the cops to go in and get that gun out of the apartment because she was afraid for herself. I guess I'm – In other words, the Supreme Court said, you know, in the apartment, they're both there, you've got to get a warrant if one says no. There's no evidence in this case that she was at the apartment, though, that she has standing to consent to the search. But also, he didn't deny all interest in the apartment. He said – they said, do you live there? He said, no, that's not sufficient to deny all interest in the apartment. No, I mean, they used – he has standing to say, don't search the apartment because – My argument is a little different. And then maybe I'm not tracking what you're saying. I agree. He has standing for Fourth Amendment purposes. The issue is whether, in fact, there's an implied consent. She was there in that apartment. Why couldn't they assume – I thought the evidence was a little bit more about her being in that apartment. There's – she was in the apartment earlier in the day. She went over to visit him. No, about her interest in the apartment. She went over to get her stuff from him. She doesn't live there. So she – well, but the point is, she's living there, and if there were cops, she's living there. Her stuff is there? I mean, what are they supposed to assume? Okay. I just wanted to – Certainly not raised in this case. My point being is that I really do think that Brigham City supplies the test here. And based on this timeline, it was physically impossible what all would have had to happen in that three minutes. She not only has to come back – she would have been there, based on a two-minute drive, she would have been there only one minute. In that time, she has to get in the apartment. Her mother has to disappear. No mother would drop her daughter off at the abuser's house and leave. The mother has to disappear. The truck has to disappear. The defendant, my client, not only has to silence her and incapacitate her from answering the door, but also to get away from the apartment, because he's nowhere to be seen at the moment when Rodriguez arrives, three minutes after the call, but to have no signs of a disturbance. There is no case that goes so far in finding that this is sufficient to justify entering that apartment. Thank you very much. Thanks. I'll reserve the rest of your time. Good morning again, Gregory Dam, on behalf of the United States. The one thing that occurs to me about this case that is so significant is what position were the police in when they were standing on the doorstep? They knew that they'd received a domestic violence call and that the victim had claimed that she'd been beaten all morning. They find the defendant who acknowledges that there'd been a domestic violence dispute. What about the solution that your opponent suggests? Okay. If you're really concerned about this, go inside, but with regard to the gun, we don't have the warrant, as Judge Trager points out, but it appears they probably could have gotten a warrant simply on the basis of what she said. And if they couldn't have gotten that warrant, maybe they just have to, you know, forget about the gun, but worry about the fact that there might have been somebody in there hurt. Well, that's, in fact, what they did. They weren't going in looking for the gun. They were going in looking for her. And in doing that, they found the gun, and they did, in fact, after that, seek the warrant. But the paramount – Can I ask why the warrant isn't in this record and why you're not arguing that? That's a very good question. It seems to me that would have solved the entire issue here. Well, everybody concedes that there was a warrant and that the gun was seized pursuant to the warrant. No one is – It would be very helpful if in the warrant they said that she had called and as well as make reference to what they saw, because then the magistrate had a basis without regard to what they – whether they should have gone in or not. And if it's only reference is what they saw, then you're going to be stuck with a good faith, you know, exception kind of argument. And I certainly think myself that the police acted reasonably. I don't know what the public would expect anybody, a policeman, to do under this circumstance other than the possibility. I mean, you know, this is a policeman on a day-to-day basis, not calculating do I have probable cause, is there someone at risk here? And nobody's challenging the validity of the warrant as far as I know on this record. No. I can find no evidence that the warrant itself has been challenged. And your comment about the police is exactly correct. I've tried to actually kind of turn the facts around a little bit. Let's assume that the police followed the defendant's suggestion and went through this technical analysis about how much time it took from somebody – for someone to get from the store to the apartment and concluded, well, I just don't think we have enough to go in there, and there's a dead body in there or an injured person, perhaps more importantly. They were on the front steps of this apartment. They knew that the apartment was associated with a domestic violence incident. The victim could not be found. Counsel suggests that there are two possibilities, either that she'd not yet arrived or that she decided not to return. Well, those are certainly possibilities, but there's also another third possibility, that she returned and was somehow enticed, drug otherwise taken into the apartment and hurt or injured by the defendant. The police would have been very remiss had they just left the apartment and she would have been in there and would have been injured. That would have been a – there would have been a horrendous outcry that the police, knowing these factors, did not respond and didn't check on her welfare. So the defense counsel tells the jury that there's evidence that he didn't even live there. We can't fault them now for going in and doing that, particularly when the defendant indicates that he didn't even live there. He indicates to the police that he didn't even live there. In fact, defense counsel tells the jury that, that they're going to hear evidence that he didn't even live there, and now he wants to claim standing to the – But living isn't a standard for standing. I mean, you have to live there. No, it certainly isn't, but it's certainly one component. But the defendant, in my humble estimation, did not establish standing whatsoever. What did the police believe when he said he didn't live there? Did they believe he was the guy, but he was lying, or? I'm not sure. Is there any testimony in the record about this? I believe there was testimony that they disbelieved him, that they – They disbelieved him? Yes, that they actually believed that he did live there. Well, that's – He didn't have – Ironically, it helps them on standing, but this – but I think it helps you in terms of being concerned about, here's a guy lying. Why is he lying if she's not there? Correct. Okay. After he acknowledged that he knew that they were there to investigate a domestic violence incident – But he had the keys in his pocket, I know you bet. That's correct. Is there a challenge to that, to their getting the keys? There's no challenge to the – and I think the reason that there's no challenge is that the apartment manager had been called, and he apparently was on his way with another set of master keys anyway, so it seems like they were going to go in one way or the other. But looking at the totality of the circumstances, it seems to me that we certainly cannot fault the police for acting in the way they did. They went in, they made a 20-second sweep just to find out whether or not there was a victim in there, and the gun was on – in plain view on the bed in the master bedroom. They left the apartment and then appropriately sought a warrant. This is not the kind of case that gives me any concern that there have been any – I hope I fare a little better on this one than on the last one. But in all respects, it appears to me that the police acted completely responsibly. Now, I will concede – I will concede the second issue in this case, however, that the pre-sentence report didn't provide the necessary information for the prior conviction, which we have attached to a motion, and we've asked this Court to take judicial notice of that prior conviction. And I'm not aware of a case in which we've actually done it this way, as opposed to remanding. I mean, I understand it seems very, you know, unnecessary, because we have it sitting in front of us, but the fact is, you didn't present it the first time. There was an error. I don't know why, if anything – there's probably nothing that the Defendant can come up with. But have we ever done it this way, i.e. with a – I'm not aware that it has been done this way, but the statute certainly does permit this Court, as well as the district court, to take judicial notice. The pre-sentence report contained the information which it was unobjected to, but it simply didn't contain the statutory reference. So we simply ask that this Court either take judicial notice or remand it to the district court to take care of this particular portion of the case. Okay. Thank you very much. Thank you so much. Anybody else? Counsel? Your Honors, I certainly understand the difficult calls that police are called on to make. But this Court has said in Brooks that there's no domestic violence exception. This case would create that exception, because this is what the officer was asked. What information did you have – this is page 82 of the record – what information did you have that suggested she ever went in the residence? Answer, no information. The information you had was to the contrary. He says the information that she was going to be on the outside. Yes. Outside. Yes. But she wasn't outside. That's what's hard about the case. She wasn't outside. She wasn't where she said she was going to be. That is the problem. But she wasn't where it was – she wasn't where she said she was going to be. But the problem is he has no information that she's inside. If you look at every one of the cases – You know, acknowledging that there was a dispute, but he doesn't live there. I mean, what is a policeman supposed to do in those circumstances? The policeman can go inside – Get a warrant. Go get a warrant. Well, the policeman could get a telephonic warrant. It would have taken just as much time to get a telephonic warrant as to do this tracking around the apartment building. I mean, you could get a telephonic warrant in three minutes. But that's because – you know, if he's looking for evidence, he's looking to find out whether somebody's been injured. But he's there looking around, and there's nothing to confirm any suspicion that she's inside. I mean, that's the problem. And that's – that would be breaking new ground, because every case cited in Brooks discussing the idea that there may be a 9-1-1 exception or special regard in domestic violence cases – I have looked at those cases. There is no case where there is no information that the person is inside. In every one of those cases, the policeman can corroborate through a neighbor having heard something, or the policeman himself either sees or hears at least some person inside, at least the defendant and also the victim. But what if the policeman had been a little perhaps more intelligent than he was in articulating and answering those questions and had said – the answer to the question is why – what information you had that somebody was inside was that she said she was coming back here and she's not on the street, so she must be inside. Well, but his answer – but he did say that elsewhere on the record, but the answer is he said she was coming back here with her mother in a white truck. She can't get there that fast. It takes 15 minutes to walk. She can't get there that fast unless she has a ride. She said on the 9-1-1 call that her mother was there. So what happened to all of these people? The record indicates that she – he knows that it would take her 15 minutes? Yes. Does the record indicate that he knew what she said on the 9-1-1 call, i.e. that she's coming with her mother in a white car? Yes, it does. Let me ask this. Do you have any objection in respect to the sentencing to taking judicial notice of the statute? I don't have an objection to taking judicial notice of the statute. However, it would be our position that it's always better for the district court to actually have that on the record and do that. Because we also have occasionally filed a statute or a judgment that shows that we would ask for judicial notice. So I understand that that's a common practice and we don't disapprove of that per se. But in the sentencing situation, we would prefer a remand. Thank you very much. Thank both of you for a very useful argument and an interesting case.
judges: B. Fletcher, Berzon, Trager